IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | | |
|---|---|---|
| WILLIAM NORKUNAS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CASE NO. 3:10-CV-210 |
| | ) | |
| v. | ) | |
| | ) | |
| | ) | |
| PARK ROAD SHOPPING CENTER, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| _____ | ) | |

**DEFENDANT'S REPLY MEMORANDUM OF LAW
IN SUPPORT OF MOTION TO DISMISS**

Defendant Park Road Shopping Center, Inc. ("PRSC") hereby responds to Plaintiff William

Norkunas' "Response to Defendant's Motion to Dismiss" filed in this matter on December 16, 2010

(hereinafter "Plaintiff's Response"). For the reasons stated in the Defendant's opening brief and in

this Reply, the Plaintiff lacks standing under applicable principles of law and his lawsuit should

therefore be dismissed.

I.      INTRODUCTION

Plaintiff supports his arguments with two defective filings: a Memorandum of Law that

exceeds the Court's 6000 word limit (even after having his Motion to Exceed Page Limits denied)

by over 2000 words[1], and Plaintiff's unsigned affidavit. *See* Motion and Order (Docs. 22 and 23);

*See also* WDNC CM/ECF User's Manual, p. 10 (non-attorneys must file with "the original 'pen'

signature."). The substance of Plaintiff's argument is that the long-standing, binding precedent and

_____

[1]Defendant's conversion of Plaintiff's brief to Word indicates the document is over 8,500
words.

tests consistently applied by federal courts to evaluate standing in Title III ADA cases should simply be ignored because they have been questioned by a U.S. District Court in Texas. These arguments are an implicit concession that these tests expose Plaintiff's lack of standing and jeopardize his lawsuit. Plaintiff's arguments are disingenuous and should be summarily rejected.

## II.     PLAINTIFF'S AFFIDAVIT ESTABLISHES THAT HE CANNOT MEET THE STANDING TESTS

Plaintiff cannot meet any of the standing tests discussed in PRSC's opening brief. *See* Dismiss Mem., pp. 6-12[2].

### A.     Plaintiff Has No Connection to Charlotte

Plaintiff continues to advance the false and absurd notion that he is a "resident of North Carolina" without making any effort to reconcile his statements to the contrary in his court filings in federal courts in Florida. *See* Norkunas Aff. (Doc. 25-2) at pp. 1-2; *See also* Exhibit 4 to Defendant's Mem. In Support of Motion to Dismiss (Doc. 21)(hereinafter "Dismiss Mem.")(Excerpts from Norkunas lawsuits filed in Florida). Plaintiff even has the gall to misrepresent to the Court that North Carolina is his "home state." *Id.* at ¶ 13; *Cf.* Dismiss Mem, Exh. 4. While Plaintiff goes to great lengths to contrive a connection to North Carolina in the general sense, he fails to establish any connection whatsoever to Charlotte or PRSC. *Id.* at pp. 1-2. While Plaintiff may own mountain property in Jefferson, North Carolina, Jefferson is *128 miles away* from Charlotte. *See* Reply Exhibit 1 attached hereto (Google Maps distance); *See also, Jones v. Sears, Roebuck & Co.*, 2006 U.S. Dist. LEXIS 86613, at *8 (E.D. Cal. Nov. 28, 2006)("a distance of over 100 miles weighs against finding a reasonable likelihood of future harm); Dismiss Mem. at pp. 6-7.

---

[2]Plaintiff contends that these tests are "unconstitutional" and are "inconsistent with other court decisions that are far more reasoned and should be rejected." Plaintiff's Response, p. 4 .

**B. Plaintiff Has No History of Past Patronage or Concrete Plans to Return**

Plaintiff cannot state when, if ever[3], he actually visited the Park Road Shopping Center. *See* Norkunas Aff., ¶¶ 5-6; *See also* Dismiss Mem. at 7-8. Plaintiff states only that he visited PRSC "recently" but he provides no date, and it is assumed this was his "testing" visit before filing suit on May 2, 2010. *Id.; See* Plaintiff's Response, pp. 3-4; *See also Brown v. Grand Island Mall Holdings, Ltd.,* 2010 U.S. Dist. LEXIS 10695, *9 (D. Neb. Feb. 8, 2010)(ADA plaintiff cannot manufacture standing by simply claiming that he "intends to return" to the defendant's place of business). Plaintiff has not provided a date when he plans to return to PRSC or to Charlotte and he has not attested that he has any *specific* plans to do so. *See* Norkunas Aff., ¶¶ 12-14. Instead, Norkunas makes only vague, conclusory and speculative assertions about "assumptions" regarding his right to travel freely in the United States. *Id.* This evidence is not probative or admissible and is inapposite to the immediate issue of standing. *See, e.g. Goldberg v. B. Green and Co., Inc.*, 836 F.2d 845, 848 (4th Cir. 1988)(speculative, conclusory assertions fail to show discrimination). Indeed, it would appear that Plaintiff admits that he had "no plan to return for a second visit." *See* Norkunas Aff., ¶ 12.

**III. PLAINTIFF'S ARGUMENTS REGARDING THE APPLICABLE LAW AND TESTS ARE UNAVAILING**

**A. The *Ingram Park Mall* Case is Distinguishable and Inapposite**

Plaintiff's entire argument is essentially based upon a recent, unpublished decision from a federal court in the Western District of Texas. *See* Plaintiff's Response, Doc. 25-1 (*Ingram Park*

---

[3]It is odd that the Plaintiff refers to PRSC as Park Road Shopping *Plaza*, which is not its proper name and is not descriptive of the shopping center.

*Mall* decision)[4]. *Ingram Park Mall* is distinguishable because there are key facts present in that case that are clearly absent in this lawsuit. First, and most significantly, Betancourt's affidavit attested that she had family members *in the city of San Antonio, Texas* where Ingram Park Mall is located. *See* Reply Exhibit 3 (Excerpt from Plaintiff Betancourt Affidavit) at ¶¶ 2-4. By contrast, Plaintiff Norkunas has no family or other connections to Charlotte as he concedes *sub silentio* in his affidavit. *See* Norkunas Aff. at pp. 1-2. Second, Betancourt stated a specific date when she had visited the mall prior to filing her lawsuit. Reply Exh. 3, ¶4. Third, Betancourt was able to state a specific time when she intended to return to the Mall in the future. *Id.* at ¶ 3. These material and important distinctions render the *Ingram Park Mall* case of no value herein.

There are several other reasons why the *Ingram Park Mall* case should not be relied on in this case. First, decisions of the Southern District of Texas are neither binding nor persuasive authority. Second, the Court's analysis, and in particular its haste to dispense with the applicable precedent of the *Lujan* and *Lyons* cases, is principally based on commentary by law professors, law students[5] and unpublished decisions. *See* Plaintiff's Response, pp. 9-13; *Ingram Park Mall*, at pp. 14-20. Third, the notion that *Lyons* and *Lujan* are inapplicable to Title III ADA cases is demonstrably incorrect, as PRSC's opening brief cited numerous federal court decisions applying those very standing tests. *See, e.g.,* Dismiss Mem., at 5-6. Plaintiff even concedes that *Lyons* and *Lujan* have been applied by many federal courts in Title III ADA cases, but he apparently dislikes the impact those cases have had on Title III ADA "tester" plaintiffs such as himself. *See* Plaintiff's Response,

---

[4]Norkunas' lawyer also represented Plaintiff Betancourt. *See* Reply Exhibit 2 (Docket Sheet from *Ingram Park Mall* lawsuit)

[5]Indeed, Kelly Johnson, who authored the Case Western Reserve Law Review Note relied on by Plaintiff, was then a law student. *See* Reply Exhibit 4 (Excerpt from cited law review Note providing biographical information for the author).

p. 10. Finally, the recent North Carolina federal court decision in *Harty v. Luihn Four, Inc.,* which is directly on point and is more persuasive authority than a decision from Texas, rejected the very arguments being advanced by Norkunas' lawyer in this case and in *Ingram Park Mall. See Luihn Four,* 2010 U.S. Dist. LEXIS 108856, *10-12 (E.D.N.C. Oct. 13, 2010)(discussing Harty's unconstitutionality, violation of right to travel, and other arguments and noting that "[t]he ADA cannot expand standing beyond the confines of Article III".).

### B.  Plaintiff's "Loss of Opportunity" and "Futility" Arguments Are Inapplicable

In an effort to bypass the devastating effect of the standing tests (discussed in Section I above), Plaintiff claims that he should be excused from these tests because, under *Ingram Park Mall,* he has experienced a "loss of opportunity" because of architectural barriers and returning to PRSC would be a futile gesture. *See* Plaintiff's Response, pp. 13-19. *Ingram Park Mall* recognized that these tests apply *only* when the defendant fails or refuses to remove the architectural barriers alleged by the Plaintiff. *Id.* at 15 ("a disabled plaintiff who establishes discriminatory violations *which continue*" is deprived the "opportunity" to benefit from goods and services)(Emphasis added); 18 ("he *would* return to property, but for its continuing violations), 19 (same, citing similar decisions). The predicate for these theories is not present in this case, because PRSC has made all readily achievable modifications to the alleged violations cited in Plaintiff's Complaint over which it has possession, custody or control. *See* Reply Exhibit 5 (Excerpt from Defendants' Verified Discovery Responses, Interrogatory No. 3, at pp. 6-7). Accordingly, there is no "continuing violation"creating "lost opportunity" or making a return visit futile.

### C.  Plaintiff's Litigation History

Plaintiff argues that his numerous lawsuits are irrelevant, but he fails to distinguish the decisions cited by PRSC in which courts have specifically found that a plaintiff's litigation history

*is relevant* when evaluating standing. *See* Dismiss Mem., pp. 10-11. Indeed, those decisions are even more pertinent in the instant case now that Plaintiff's affidavit confirms that he can provide no more than "generalized assertions" regarding an intent to return to PRSC. *Id.*; *See* Norkunas Aff., pp. 1-2. Courts are not only entitled to, but must, call into question an excessively litigious plaintiff's motives and sincerity.

Plaintiff's litigation history severely undercuts the legitimacy of his contention that he and other "testers" and "advocates for the disabled" are essentially "private attorneys general" who are entitled to special treatment for standing purposes. *See* Pl. Resp., p. 9, 18, 24. This argument attempts to confer standing on Plaintiff because of his alleged efforts to advocate for non-parties, despite his admitted lack of any connection to Charlotte or Park Road Shopping Center. *See* Pl. Resp. at 24. However, this argument was rejected in *ERC v. Abercrombie & Fitch Co.* (relied on by Plaintiff), because the standing requirements of Title III of the ADA do not allow plaintiffs to assert the rights of non-parties in order to obtain standing, unlike the looser standing requirements of Title II, which is not implicated in this lawsuit. *See Abercrombie*, at *27-31 (noting the more "limited right to relief under Title III" such that merely "alleging discrimination" is not sufficient to confer standing).

Contrary to Plaintiff's argument, PRSC is not asking the Court to declare Norkunas a vexatious litigant barring him from future filings. However, it is interesting and curious, that Plaintiff relies heavily on several decisions involving Jarek Molski, who, as of 2007, had filed over 400 Title III ADA lawsuits. *See* Pl. Resp., pp. 9, 11, 18, 24; *See Molski v. Evergreen Dynasty Corp.*, 500 F.3d 1047 (9th Cir. 2007), *cert. denied*, 2008 U.S. LEXIS 8442 (U.S., Nov. 17, 2008). In 2007, a federal court in California declared Molski to be a vexatious litigant barring him from future filings and the 9th Circuit *affirmed* this decision. *See Molski v. Evergreen Dynasty Corp.*, 500

F.3d 1047 (9th Cir. 2007), *cert. denied*, 2008 U.S. LEXIS 8442 (U.S., Nov. 17, 2008).

There are striking similarities between Norkunas and Molski which are instructive in considering the legitimacy of Norkunas' standing arguments. First, a large volume of lawsuits alone "might indicate an intent to harass defendants into agreeing to cash settlements." *Evergreen Dynasty*, 500 F.3d at 1051. Second, the frequent use of boilerplate complaints alleging nearly identical "discrimination" may indicate such an intent to harass. *Id.* (describing the complaints as "contrived and not credible."). Third, the Ninth Circuit concluded that Molski's motivation in bringing numerous suits "was to extract cash settlements from defendants[6]." *Id.* at 1052. Fourth, the Plaintiff's representation by the same counsel in most of his lawsuits reflects a troubling pattern, and the Ninth Circuit noted that "the high settlement rate in cases brought by [the law firm representing Molski] coupled with the volume of cases filed, showed a pattern of extortion." *Id.* at 1053-54.

## IV.    CONCLUSION

For the reasons cited herein, PRSC moves the Court to dismiss the Plaintiff's lawsuit for lack of standing.

---

[6]Norkunas, who made no effort to discuss his alleged concerns with PRSC before filing suit, brazenly contends that "[i]t is Defendant, not Plaintiff, who is to blame for the instant lawsuit." *See* Pl. Resp. at 24.

This the 21st day of December, 2010.

*s/G. Bryan Adams, III*
G. Bryan Adams, III (N.C. Bar No. 17307)
Philip M. Van Hoy (N.C. Bar No. 5869)
VAN HOY, REUTLINGER, ADAMS & DUNN, PLLC
737 East Boulevard
Charlotte, North Carolina 28203
Telephone:  (704) 375-6022
Fax:  (704) 375-6024
Email: bryan.adams@vradlaw.com
        phil.vanhoy@vradlaw.com

OF COUNSEL:
Robert N. Burris (N.C. Bar No. 634)
BURRIS, MacMILLAN, PEARCE, McCUTCHEON& BURRIS
6857 Fairview Road
Charlotte, North Carolina 28210
Telephone: 704-365-2600
Fax: 704-364-2637
Email:   bob@bobburrislaw.com

## WORD COUNT CERTIFICATION

Defendant hereby certifies that this Reply Memorandum of Law is 2,000 words or less,

exclusive of the caption, signature lines and Certificate of Service in accordance with the Court's

Case Management Order.

## CERTIFICATE OF SERVICE

The undersigned counsel of record for Defendant hereby certifies that he has served a copy of the foregoing REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS on Plaintiff's counsel of record in this action by filing on the CM/ECF system which will deliver copies electronically to the following:

Pete M. Monismith
Thomas B. Bacon, P.A.
1710 Quarry Lane
Apollo, PA 15613
Email: monismith@thomasbaconlaw.com

Sabrina Winters
15720 John J. Delaney Drive
Suite 300
Charlotte, NC 28277
Email: swinters@sabrinawinterslaw.com


This 21st day of December, 2010.

*s/G. Bryan Adams, III*
G. Bryan Adams, III (N.C. Bar No. 17307)
Philip M. Van Hoy (N.C. Bar No. 5869)
VAN HOY, REUTLINGER, ADAMS & DUNN, PLLC
737 East Boulevard
Charlotte, North Carolina 28203
Telephone: (704) 375-6022
Fax: (704) 375-6024
Email: bryan.adams@vradlaw.com