UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:10-cv-210-FDW-DSC

| | |
|---|---|
| WILLIAM NORKUNAS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | ORDER |
| ) | |
| PARK ROAD SHOPPING CENTER, INC., ) | |
| ) | |
| Defendant. ) | |
| ) | |

THIS MATTER is before the Court on Defendant's Motion to Dismiss for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1). (Doc. No. 20). The Court held an evidentiary hearing on January 19, 2011, to consider whether Plaintiff has standing to bring an Americans with Disabilities Act claim against Defendant. After considering the parties' arguments at the hearing, their briefs and supporting documentation and evidence, and the applicable law, Defendant's Motion to Dismiss is GRANTED. Based on the whole record, the Court is unable to conclude that Plaintiff has suffered a sufficiently particularized injury-in-fact to satisfy the case-or-controversy requirement of Article III of the United States Constitution.

## I. FINDINGS OF FACT

Based on the evidence presented at the January 19, 2011, hearing and the affidavits and exhibits accompanying the parties' briefs,[1] the Court makes the following findings of fact:

---

[1] Plaintiff relied upon the "Affidavit of William Norkunas" ("Norkunas Aff.") (Doc. No. 25-2) in both his Response in Opposition to Defendant's Motion as well as at the January 19 hearing to demonstrate Plaintiff's Article III standing, despite the Court's clear admonition that "[t]he parties should be prepared to present evidence" at the hearing. (Doc. No. 31). Defendant argues that Norkunas' "Affidavit" is not competent, as it was electronically signed with the familiar "/s/ Bill Norkunas" and not with pen, as required by this Court for affidavits and unsworn declarations by non-attorneys, such as Norkunas' "Affidavit." (Doc. No. 26 at 1 (citing WDNC CM/ECF User Manual p. 10)). Plaintiff subsequently filed a pen-signed copy of the affidavit. (Doc. No. 34). For the purposes of addressing Defendant's Motion, the Court will consider

1. Plaintiff is a disabled person within the meaning of Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181, *et seq*., limited in his mobility and bound to ambulate in a scooter. (Norkunas Aff. ¶ 1).

2. Defendant Park Road Shopping Center is a place of public accommodation for the purposes of Title III. (Compl. ¶ 7); 42 U.S.C. § 12181(7).

3. Plaintiff maintains residences in both Florida and North Carolina, having purchased property in Jefferson, North Carolina, in 2005. Plaintiff's state of domicile is Florida (Doc. No. 21-4 at 2; Doc. No. 21-4), although Plaintiff visits his house in Jefferson, North Carolina, at regular three-month intervals. (Norkunas Aff. ¶¶ 3-5).

4. Plaintiff travels through North Carolina on a regular basis to visit his house in Jefferson, North Carolina. (Norkunas Aff. ¶ 4).

5. When traveling between his Florida and North Carolina residences, Plaintiff may travel through Mecklenburg County and the Charlotte metropolitan area via the I-77 and I-485 corridors. (Doc. No. 21-2).

6. Plaintiff's Florida residence is more than 700 miles from Defendant. (Doc. No. 21-2). The Court takes judicial notice that Plaintiff's North Carolina residence is 120 miles from Defendant.

7. Plaintiff is an ADA "tester" that travels to various places of public accommodation for the purpose of determining that location's compliance with the accessibility provisions of Title III of the ADA. See, e.g. Judy v. Pingue, No. 2:08-cv-859, 2009 WL 4261389 at *5 (S.D. Ohio Nov. 25, 2009) (citing Tandy v. City of Wichita, 380 F.3d 1277, 1287 (10th Cir.

---

Norkunas' "Affidavit" to be competent evidence pursuant to 28 U.S.C. § 1746 and the Local Rules of this District.

2004)). (Norkunas Aff. ¶ 2; Doc. No. 21-3; Compl. ¶¶ 1, 5-6).

8. On one occasion, Plaintiff visited the Park Road Shopping Center, located at 4201 Park Road in Charlotte, North Carolina. During Plaintiff's visit, he documented fifteen (15) barriers to access in the parking lot, entry-ways, and restroom facilities, all of which allegedly violated the ADA's accessibility requirements. (Norkunas Aff. ¶¶ 6-10; Compl. ¶ 10).

9. Plaintiff has not returned to the Park Road Shopping Center since filing this suit in May 2010.

10. Plaintiff has not identified any specific dates or clearly-defined plans to return to the Park Road Shopping Center. Plaintiff indicates that he would like to return to the Park Road Shopping Center at some point, but that to do so would be futile until Defendant becomes ADA-compliant. (Norkunas Aff. ¶¶ 13-14).

## II. CONCLUSIONS OF LAW

### A.

Where, as here, a defendant challenges the factual predicate of subject matter jurisdiction, the Court "is to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." Richmond, Fredericksburg & Potomac R.R. Co. v. United States, 945 F.2d 765, 768-69 (4th Cir. 1991) (citations omitted); Kerns v. United States, 585 F.3d 187, 192 (4th Cir. 2009). Similar to a motion for summary judgment, the non-moving party must set forth specific facts beyond the pleadings to show that a genuine issue of fact exists. Id. Thus, this Court will grant the Rule 12(b)(1) motion "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." Id.

1.

Article III of the Constitution restricts the federal courts to hear only actual cases and controversies. "Among the several doctrines that have grown up to elaborate [this] requirement, the one that requires a litigant to have 'standing' to invoke the power of a federal court is perhaps the most important." Friends of Ferrell Parkway, LLC v. Stasko, 282 F.3d 315, 319 (4th Cir. 2002) (citations omitted). The question before the Court is whether Plaintiff "has a sufficient personal stake in the outcome of [the] dispute to render judicial resolution of it appropriate in a society that takes seriously both 'the idea of separation of powers' and, more fundamentally, the system of democratic self-government that such separation serves." Id. (quoting Allen v. Wright, 468 U.S. 737, 750 (1984)). As with other jurisdictional requirements, Plaintiff bears the burden of establishing he has standing to bring suit.[2] Id. (citations omitted).

In order to demonstrate standing, and thus survive Defendant's Motion, Plaintiff must satisfy the "irreducible constitutional minimum" that (1) he has suffered an injury in fact, that is, "an invasion of a legally protected interest that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical;" (2) the injury is fairly traceable to the defendant's actions; and (3) it is likely, and not merely speculative, that the injury will be redressed by a favorable decision. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992) (internal quotations omitted); see also Long Term Care Partners, LLC v. United States, 516 F.3d 225, 230-31 (4th Cir. 2008).

Equitable remedies are only available upon a showing that a plaintiff has suffered irreparable

---

[2] It is well-established that standing is a jurisdictional prerequisite, see, e.g., Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 102 (1998), and thus the question of whether Plaintiff has standing to sue is properly addressed in a Rule 12(b)(1) motion.

injury, "a requirement that cannot be met where there is no showing of any real or immediate threat that the plaintiff will be wronged again." City of Los Angeles v. Lyons, 461 U.S. 95, 111 (1983). Absent a claim of future injury, a plaintiff lacks standing to bring a claim for injunctive relief. Id. at 105. To hold otherwise would violate the prudential standing limitation prohibiting citizens from suing to enjoin generally unconstitutional conduct. Id. at 111 ("Absent a sufficient likelihood that he will again be wronged in a similar way, [plaintiff] is no more entitled to an injunction than any other citizen of Los Angeles; and a federal court may not entertain a claim by any or all citizens who no more than assert that certain practices . . . are unconstitutional"). Furthermore, the allegation that a plaintiff will suffer a future injury at the hands of a defendant must be non-speculative and must evince more specificity than the future harm will occur "some day." See Lujan, 504 U.S. at 564.

Courts have applied this requirement with equal force to plaintiffs seeking injunctions under the ADA, the only remedy available for private enforcement actions brought under Title III. See 42 U.S.C. § 12188(a); Gregory v. OTAC, Inc., 247 F. Supp. 2d 764, 770 (D. Md. 2003). "In ADA cases, . . . a plaintiff does not have standing to obtain injunctive relief if he cannot demonstrate a likelihood that he will suffer future discrimination at the hands of the defendant." Gregory, 247 F. Supp. 2d at 770 ; Harty v. Luihn Four, Inc., No. 5:10-cv-107-BO, 2010 WL 4026092 at *3 (E.D.N.C. Oct. 13, 2010). In order to demonstrate a likely future harm, Plaintiff must demonstrate an intention to return to the Park Road Shopping Center. Lujan, 504 U.S. at 564; Camarillo v. Carrols Corp., 518 F.3d 153, 158 (2d Cir. 2008); Hubbard v. Rite Aid Corp., 433 F. Supp. 2d 1150, 1162-63 (S.D. Cal. 2006); Disabled Patriots of Am., Inc. v. Fu, No. 3:08-cv-542-RJC-DSC, 2009 WL 1470687 at *3 (W.D.N.C. May 26, 2009) (Conrad, C.J.). In assessing the credibility of a plaintiff's intention to return, courts consider a number of factors, including: (1) the plaintiff's

proximity to the defendant's place of public accommodation; (2) the plaintiff's past patronage; (3) the definiteness of the plaintiff's plan to return; and (4) the plaintiff's frequency of nearby travel. Equal Rights Ctr. v. Abercrombie & Fitch Co., No. JFM-09-3157, 2010 WL 4923300 at *4 (D. Md. Nov. 29, 2010); Small v. Gen. Nutrition Cos., Inc., 388 F. Supp. 2d 83, 89-90 (E.D.N.Y. 2005).

2.

Defendant argues that Plaintiff does not have standing because he is unable to demonstrate that he has suffered injury-in-fact. The Court agrees. On the whole record, the Court is unable to conclude that Plaintiff will likely suffer future harm at the Park Road Shopping Center. First, Plaintiff's residence in Jefferson, North Carolina, may bring him to the state on a regular basis, but the distance of 120 miles between Plaintiff's residence and the Park Road Shopping Center is too great for the Court to consider it likely that Plaintiff will have occasion to return to Defendant's establishment while in Jefferson. See Jones v. Sears Roebuck & Co., No. 2:05-cv-535-MCE-KJM, 2006 WL 3437905 at *3 (E.D. Cal. Nov. 29, 2006) (noting that a number of California courts "have consistently maintained that a distance over 100 miles weighs against finding a reasonable likelihood of future harm").

Second, Plaintiff's past patronage of Defendant's place of public accommodation consists of a single occasion, which gave rise to this suit. (Norkunas Aff. ¶ 6; Compl. ¶ 5). Furthermore, while Plaintiff may not need to identify a specific date on which he plans to return to the Park Road Shopping Center, he must have a non-speculative intent to return that amounts to more than an allegation that he will return "some day." Lujan, 504 U.S. at 564. Aside from asserting only a vague desire to return to the Park Road Shopping Center "after the holidays," Plaintiff's affidavit evinces no actual intention to return and relies instead on an assertion that returning would be

6

"futile," apparently in an effort to avoid making non-speculative plans to return.[3] (Norkunas Aff. ¶ 14). Such nebulous plans amount to the exact sort of "some day" intention the Supreme Court has held to be insufficient to support standing. Id. Finally, despite the fact that Plaintiff may travel through the Charlotte metropolitan area on his way between Florida and North Carolina three to four times per year, he has little conceivable reason to leave the immediate I-77/I-485 corridors, and no reason at all to drive the distance between the interstate highway and the Park Road Shopping Center in the course of his travels.[4] Plaintiff's Affidavit makes no mention of familial or business relations in Charlotte or Mecklenburg County, or otherwise provide any connection to the region from which the Court may infer that he would suffer future injury at the Park Road Shopping Center.

Aside from Plaintiff's naked and self-serving assertion that he would like to return to Defendant's place of public accommodation but for the futility of such an attempt, there is little in the record to indicate Plaintiff will likely return to the Park Road Shopping Center or suffer a future injury at Defendant's hands. At best, Plaintiff has only demonstrated a *de minimis* likelihood of future harm, which is insufficient. Luihn Four, Inc., 2010 WL 4026092 at * 3. Because Plaintiff has not suffered an actual or imminent injury-in-fact, he lacks standing to file suit.

B.

This holding is consistent with this Court's line of "tester" cases filed by Owen Harty, a disabled individual living in Broward County, Florida. In those cases, the Court has held that Mr.

---

[3] Plaintiff argues the alleged futility of returning to Defendant's establishment and the resulting deterrent effect creates sufficient injury as to provide Plaintiff with standing. (Doc. No. 25 at 17-19). The Court disagrees and will address this issue in greater detail, *infra* at 9-10.

[4] The Court recognizes that Plaintiff may leave the I-77 corridor for the express purpose of returning to Defendant's establishment to confirm its ADA-compliance. However, as noted *infra* at 11, such a purpose is insufficient to satisfy Article III standing.

Harty has standing to file ADA claims against Charlotte-area defendants despite being a Florida resident because his business frequently causes him to travel not only to North Carolina but to the Charlotte area specifically. E.g., Fu, 2009 WL 1470687 at *3 (Conrad, J.); but see Luihn Four, Inc., 2010 WL 4026092 at *3 (finding Mr. Harty has no standing to sue in Raleigh, North Carolina). In Disabled Patriots of America, Inc. v. Promenade Shopping Center LLC, No. 3:08-cv-533-FDW-DCK (W.D.N.C. Nov. 25, 2009), the undersigned held an evidentiary hearing on February 18, 2009, to specifically address the question of whether Mr. Harty had standing to bring Title III suits in and around Charlotte. After considering Mr. Harty's testimony and weighing the factors to determine whether it was likely that Mr. Harty would return to the defendant's establishment, the Court held that Mr. Harty had standing to bring a Title III action. (See generally Tr. of Feb. 18, 2009 Mot. to Dismiss Hr'g).

Mr. Harty testified that he regularly travels to Charlotte for the purpose of attending gun shows, where he purchases teaching materials and firearm accessories for his job as a certified firearms instructor in Florida. While visiting the gun shows, which occur at the Metrolina Expo Center and Fairgrounds, Mr. Harty testified that he travels to a CVS Pharmacy located near the defendant shopping mall for the purpose of purchasing pharmaceutical products directly related to his disability. Afer shopping at the CVS, Mr. Harty visited the Promenade Shopping Center on at least two occasions. Although the CVS and Promenade Shopping Center are located on the opposite end of the Charlotte metro area than the Metrolina venue, they both lay on I-485, a favored route of Mr. Harty's, and thus the Court concluded it was reasonable to expect that Mr. Harty would have occasion to pass within close proximity of the defendant's establishment while traveling to the Metrolina Expo Center. Additionally, Mr. Harty testified at the February 2009 hearing that he had specific plans to return to Charlotte for another gun show, also to be held at the Metrolina

fairgrounds in March 2009. He further testified that he would be returning to Charlotte with his wife in an effort to convince her to move permanently to the Charlotte region.

In short, Mr. Harty and Mr. Norkunas are very differently-situated plaintiffs. Mr. Harty demonstrated substantial ties to the Charlotte region from which the Court could infer that it is likely that Mr. Harty will return to the Promenade Shopping Center and suffer injury from other places of public accommodation in the Charlotte-metro region that are not ADA-compliant. Plaintiff *sub judice*, however, has only demonstrated a tenuous connection to Charlotte whereby he may have occasion to drive through the region on I-77. Such a connection is not sufficient to establish the likelihood of future harm and cannot support Article III standing.

C.

Plaintiff does not contest that he has little connection to the Charlotte region, but argues that he has suffered an actual injury both as an ADA tester, and because he is deterred from returning to Defendant's shopping mall until it becomes ADA-compliant. Plaintiff's efforts to broaden the scope of Article III to permit him standing in this case are ultimately unconvincing. Specifically, Plaintiff's reliance on Betancourt v. Ingram Park Mall, L.P., 735 F. Supp. 2d 587 (W.D. Tex. 2010), is misplaced (Doc. No. 25). In that case, the court held that an ADA tester living in Kansas had standing to bring a Title III action against a defendant shopping mall in San Antonio. Id. at 605. After thoroughly discussing the history of Title III and the public policy goals Congress intended to put in place through its enactment, id. at 595-96, the court distinguished Lyons and Lujan and criticized the federal courts' rigid adherence to the requirement that a plaintiff must have clearly defined plans to return to an offending establishment before he has standing. Id. at 596-98. Instead, the court determined that the policy underlying Title III and the ADA was better served by applying a "broader" view of standing so that plaintiffs who are deterred from actually returning to a

9

defendant establishment, because doing so would be futile, have suffered a sufficient injury-in-fact to maintain standing to bring suit.  Id. at 599.  The court concluded that a disabled plaintiff suffers "on-going injury so long as she is effectively denied the opportunity to participate in or benefit from the goods, services . . . or accommodations of the entity. . . . Recognizing this, some courts . . . have appropriately held that the Title III injury includes the deterrent effect that architectural barriers have on the plaintiff." Id. at 602.

Setting aside this Court's reservations with portions of the Betancourt court's rationale and the conclusions Plaintiff draws therefrom,[5] Betancourt is easily distinguishable from the case at bar. In reaching its holding, the court placed particular emphasis on the fact that the Betancourt plaintiff had concrete and definite plans to return to San Antonio–where the defendant shopping mall was located–in the Summer of 2011 to visit family and further alleged she would continue to visit in the future.  Id. at 605.  The court noted, "the risk of injury in fact is not speculative so long as the alleged discriminatory barriers remain in place, the plaintiff remains disabled, and the plaintiff is '*able and ready*' to visit the facility once it is made compliant." Id. at 604 (emphasis added).  Thus, while Title III may recognize that a plaintiff need not engage in the futile gesture of visiting a building containing known barriers to access that the owner has no intention of remedying, a plaintiff "'must at least prove knowledge of the barriers and that they would visit the building in the imminent future but for those barriers.'" Id. at 599 (quoting Sterger v. Franco, 228 F.3d 889, 892 (8th Cir. 2000)).

---

[5] The Betancourt decision relies in large part on academic commentary discussing the normative, rather than positive, qualities of Title III law.  735 F. Supp. 2d at 598-99.  Furthermore, while this Court agrees to some degree with the Betancourt court's analysis of Lyons and Lujan, it respectfully disagrees with the weight given those cases by the Western District of Texas in determining the scope of standing under Title III.  Id. at 596.

Here, Plaintiff is not "able and ready" to visit the Park Road Shopping Center once it is made ADA-compliant and has made no allegation that he will return to Defendant's shopping mall in the imminent future. Plaintiff's distance from Defendant combine with the lack of any plans to return to either the Park Road Shopping Center or Charlotte to torpedo Plaintiff's alleged futile-gesture standing. It cannot be said that Plaintiff is "denied the opportunity to participate in or benefit from the goods [and] services," id. at 602, by Defendant's alleged failure to conform with Title III's accessibility provisions, when Plaintiff does not otherwise have an opportunity to visit Defendant's shopping mall. To hold otherwise, as Plaintiff urges, would permit any disabled plaintiff to simply include conclusory boilerplate language in a Title III complaint, such as "futile gesture" and "deterrent effect," in order to establish standing to sue after visiting an establishment on a single occasion. The Court will not endorse this manner of "drive-by" Title III lawsuit. Such an outcome would simply ignore clearly-established Supreme Court precedent and would threaten to undermine Article III's case-or-controversy requirement in its entirety.

Nor is Plaintiff afforded standing simply by way of his status as an ADA "tester." An ADA tester does not have standing to sue under Title III in the same way a tester has standing under Title II of the Civil Rights Act of 1964, as Plaintiff suggests. (Doc. No. 25 at 19-22). Instead, the law makes clear that a Title III plaintiff cannot use her status as a tester to satisfy the standing requirements where she would not have standing otherwise. Betancourt, 735 F. Supp. 2d at 604; Judy, 2009 WL 4261389 at *5 ("Any tester status that [the plaintiff] might possess does not confer standing to seek prospective relief where he cannot show a reasonable likelihood of returning to [the defendant]'s property) (citing Tandy, 380 F.3d at 1287); Simon Property Group, 2010 WL 5065982 at *3 (same). Thus, the naked assertion of a desire to return to a defendant establishment for the sole purpose of confirming ADA-compliance, without more, is insufficient to establish standing. Simon

11

Property Group, 2010 WL 5065982 at *3 (citing Kelly Johnson, Note, Testers Standing Up for Title III of the ADA, 59 Case W. Res. L. Rev. 683, 698 (2009)); Harris v. Stonecrest Care Auto Ctr., LLC, 472 F. Supp. 2d 1208, 1219 (S.D. Cal. 2007) ("[t]his [c]ourt is unable . . . to find any authority showing that Title III of the ADA was intended to create such broad rights against individual local businesses by private parties who are not bona fide patrons, and are not likely to be bona fide patrons in the future").

Despite Plaintiff's urging, the Court will decline to broaden standing for Title III cases in a way that renders the "irreducible constitutional minimum" that Plaintiff suffer a concrete and particularized and actual or imminent injury in fact meaningless. Lujan, 504 U.S. at 560. Because Plaintiff has been unable to provide anything other than a "some day" allegation that he will return to the Park Road Shopping Center, or the Charlotte area, the Court is unable to conclude that Plaintiff has standing to bring this suit.

### III. CONCLUSION

IT IS THEREFORE ORDERED that Defendant's Motion to Dismiss for lack of subject matter jurisdiction (Doc. No. 20) is GRANTED. Plaintiff's Complaint is hereby DISMISSED with prejudice.

IT IS SO ORDERED.

Signed: April 14, 2011

Frank D. Whitney
United States District Judge